Mr. Justice McKINLEY
 

 delivered the opinion of the court.
 

 This is a case certified to this court from the Circuit Court-for the district of Kentucky.
 

 The plaintiffs brought an action of ejectment, in that court, against the defendants.; and to support their'.action, they read to the jury a patent for 1000 acres of- land, granted by tire state of Kentucky to Charles Croghan, hearing date the 29th of November,-1826, and provéd title in themselves by the will of the said Charles Croghan. The plat marked A was shown to the jury; and the surveyor proved, that the fork of Mayfield creek., at the letter A, was correctly laid down; that five huildred- poles; on a straight line, on the branch. leading from Mayfield creek, would extend the line to letter B, on
 
 *191
 
 the plat, where one of the patent-corners was found; and that the plat truly represented the land, granted by the patent.
 

 The defendant then read the following entry of William Croghan, assignee, for 1000 acres, dated 16thof August, 1784, on which the patent is founded, to wit: “ William Croghan, assignee, enters 1000 acres of land, part of a military warrant, No. 2023, beginning at a fork of Mayfield creek, about two1 miles By-water above Fort Jeffer.son, where a branch, occasioned by the high waters from the Mississippi, runs out of said creek, and at high water empties into the river at the upper end of the iron-banks; from said beginning 500 poles, when reduced to a straight line; and then off from the branch towards the Mississippi, on a line parallel to Mayfield creek, until a line from the extremity of said line', parallel with the first line, will strike Mayfield creek, to include the quantity.” The defendants then offered in evidence a patent from the state of Kentucky to Hugh' Nelson, for 103 acres of land, bearing date the 17th of December, 1830; and proved.by the surveyor, that the beginning of the entry .was at A, on the plat, and that the end of the first line was at B,' and if a line were run from B towards the Mississippi river, in a direction parallel with the general course of Mayfield creek,. for twelve miles above the fork at A, it would be tiered line extending from the letter B to the Mississippi river at F. It was also proved, if a line were run from, the comer at B parallel with Mayfield creek, below the fork, to the letter D, at the mouth of the creek, it would-run from B to E, and leave out the land claimed by the defendants. The surveyor- also .proved-, that the various lines on the' plat were correctly laid down from actual survey. ■
 

 “ The counsel for the defendants then prayed the court to instruct the jury, if they believe, from the evidence, that the course of May-field creek from A to D. is correctly laid down, then a line from B towards the Mississippi river should be run parallel to that line, to conform to the entry; and if, in running that parallel line, they shall believe, from the evidence, that the improvement of- the defendants is left out, they ought to find- -for the defendants.-^ But^the court were divided in opinion on the point, whether the second line .called for in the entry should run from B to E, or, whether the line'from B to C should be taken'and recognised as the true and proper line, it being the line on which the patent was founded. One of the judges being of the opinión, that for all the land south and west-pf a line from B to E the patent was void; and the other judge being "of- a contrary opinion. They were also divided in opinion, for therforegoim•• ¡reasons, whether the foregoing instructions ought to be given or,.refused.”
 

 By a statute’of Kentucky, passed the 26th of December, i820, it is required, that all .surveys thereafter to be -made on .entries west'-of Tennessee river should be run according to the calls of the eritry. And “to enable the-register to ascertain, whether the survey is made according to entry, a copy of the entry shall. be returned to the re
 
 *192
 
 gister’s ^office, with the plat and certificate of survey; and any patent issuing on á survey made contrary to the location shall be void "to all intents and purposes,-so far as the'same may be differént and variant from the location.” Thé survey in this case was made on the 5th day of November, 1825; and, the patent; under which the 'defendants elaim, "dated the 17th day of December j 1830, was granted for land sold by the" state -subsequent- to. the date of the patent under which the plaintiffs claim title, and which covers part of the land claimed by the defendants. This brings in question, the legality of the survey, and the- construction of the entry on which it was made, and leads to an examination of the points certified for our determination.
 

 But before we- enter on that duty it will -be proper to consider-the circumstances in which the locator was j>laced when he made the entry. It was. proved in the Circuit Court, that along this branch there was a very dense cane-brake, and the greater part of the land, covered by the patent is still a dense cane-brake. It was also proved, that a line run parallel with the' general' course of Mayfield creek, for twelve'miles abqve the fork, and crossing'the branch, at the "teVminafion of the 500 .poles, from A to B, on the plat, would strike-the Mississippi- river at F, on the plat, a considerable distance below Ihe corner called for in the patent at the letter C. ' And it appears by the plat that the ereek" continues to run- neárly the same course for 300 or 400 yards below the fork, and then runs north of northwest'for about 300 poles.Now"we have a right" to -infer, from the facts proved,' that all the land included in Croghan’s patent,.and all the river-bottom above Mayfield creek, at the date of the -entry, was a dense cane-brake'; because, if an object, pérmanent in its .nature, is proved to exist at' the time of the trial, it is fair to infer that it existed -at the time the entry was made. Crochet
 
 v.
 
 Greenup,4 Bibb, R. 158. The history and topography -of the great valley of the Mississippi proves satisfactorily, that, where there is a eane-braké
 
 now
 
 there was one sixty years ago ; and this fairly induces the belief that the cane.upon the rich and alluvion lands is coeval with the oldest trees'-of the forest. As the locator had the means of ascertaining the course of Mayfield creek above the fork, where it .ran across the high lands, and where there was no cane, it .is reasonable to suppose, from the calls of the. entry, that he believed that Mayfield creek, below the fork, ran. nearly at right' angles to the branch in its general course to the river. And he had a right, from the circumstances, also to believe, that the distance'from the fork of the creek to the river was about two miles, when in fact it was less 'than one mile.
 

 It is obvious from these circumstances,' and the calls of the entry, that the locator believed the survey to' be made upon it would approach'as near to a parallelogram as the irregularity-of the two natural boundaries would permit. 'We are led to the conclusion,
 
 *193
 
 therefore, that these mistakes were all occasioned by the impracticability of ascertaining the relative positions of the objects called for, and the courses and distances of the lines necessary to include the quantity of land specified in the entry. But mistakes of this character have "been corrected, as far as practicable, by the ¡courts of. Kentucky, in giving construction to entries,' and particularly in two recent cases- like this between military claims and purchases from the state. Rays
 
 v.
 
 Woods, and Daniel, &c.
 
 v.
 
 Allison, 2 B. Monroe’s Rep. 224. Keeping these mistakes in view, we will proceed to give construction to the entry. The call to run from the' termination of the base line at B; 500 poles from the fork of the creek at A, and olf from the branch towards the Mississippi-on a line parallel to Mayfield creek, until.a line from the extremity of said line, parallel with the first line, will .strike Mayfield creek, to include the, quantity, presupposes that a line from- the' termination of the base line on the branch, parallel with Mayfield creek, to include the-quantity, would, terminate before it reached the river, otherwise the locator would have called to run to the river. But it was found, when they made the survey, that the whole trea, bounded by the-branch, from the termination of the 500 .poles, Mayfield creek to its mouth, and the Mississippi river, down to the < letter E, the point where a line running from the termination of the base line, parallel • to. Mayfield creek, strikes the river, would include but 887 acres, and when reduced to straight lines, would present a rhomboidal figure, with two extremely acute, and two extremely obtuse angles, instead of..the figure which must have been in the mind of the locator when he made the entry. ' We might, therefore, upon the authority of the cases referred to in 2 B. Monroe’s Rep., sustain -the survey on the ground of the mistakes of the locator, evidently made under the influence of causes well calculated to mislead him. But there -are • other reasons and other .authorities upon which this entry and'survey may be • sustained. It is a well -settled rule of- construction, that where;, there are calls in an entry repugnant to • each other, those which are inconsistent with the main intention of the locator, manifested by the wprds of the entry, shall be rejected to give effect to the entry. For example; distance shall prevail over course, where it appears by other calls in the entry the course has been mistaken. Smith
 
 v.
 
 Harrow and others, 1 Bibb, 104. A call to include a natural object will prevail ■ over a mistaken distance called for to reach the object. Preeble
 
 v.
 
 Vanhoozer, 2 Bibb, 118; McIver
 
 v.
 
 Walker and another, 9 Cranch, 173. Testing the entry by these rules, has it been properly, surveyed ?
 

 Three of the' lines axe natural and permanent boundaries, except the line on the river, which,may be extended in length;, the fourth is artificial and movable. It has been already shown that aline from the termination of the line on the branch, at B, to the river at E, .and thence up the river to the mouth of Mayfield creek, will not
 
 *194
 
 include the quantity, of land called for in the- entry. If it is practicable, by'a reasonable construction of the entry, to gire the whole quantity of land called for, it is the duty of the court to give such construction. The mistakes referred to have defeated'the intentions, of the locator, no doubt, as to the- figure- of the survey; but, like all prudent locators,- he provided, as far as he could, against the influence of such mistakes, by requiring that the' two last lines of the survey should be so run as to include the quantity of land called' for jn the entry. To these two lines he gave course, but gave no specific distance to either, that they might be. run long enough to include the quantity; The first of these lines Was to run from the termination of the base liñe atB, “ off, from the branch towards the Mississippi, on a line parallel to Mayfield creek,” but no specific distance is given, nor is any natural object called for as the termination of this line. Its termination was to be governed, therefore, by the relative positions of the objects previously called for, and the aótual distance of the line, on the branch,-from the river, and by the necessary course and distance,that the first and second of these . two lines should run to include the quantity; and therefore he continues the call by saying, “ until a line parallel to the first (the base line) will' strike Mayfield creek, to include the quantity.” The word “ until,” in grammatical construction, modifies and qualifies the words used to give course • and distance, and, in legal construction, the call for course must yield 'to the call for quantity, the latter being the most important call in the entry.
 

 The great and leading-object of every entry is to obtain the quantity of land specified in it;, every other call, therefore, must be regarded as intended to effect this principal object, and- as subordinate" thereto. The call; to run a line parallel with the first, of base line, is, therefore, repugnant to .the call to include the. quantity, and must be rejected. .Because, if this line had been run parallel' with the base line, thé quantify of land would not have been included. -. And for the same- reason the words “ on a line parallel to. Mayfield creek” must be rejected.^ they being, also, repugnant to the call to include the quantity. The survey has,, therefore, in our opinion, been made in' conformity with the entry, by running from the mouth of Mayfield creek, down the river, to the corner at C, that'being the-distance required to include the quantity; and the Hne from-B, another corner, has been properly run to C, that being the course.and distance necessary to: close the survey and to. .include the quantity'of land called for in the entry. It. is the opinion of • this court, therefore, that the .Circuit Court ought to have' refused the instruction prayed for by the defendant’s counsel.
 

 It is -ordered,, that it be certified, to the Circuit Court, that the line fronrB to C “should be taken and recognised as.the true and ' proper, line,” and that the instructions, prayed-by the defendant’s counsel ought to be refused.
 

 
 *195
 
 Mr. '.Justice • McLEAN.
 

 ‘‘.Croghan, assignee, enters 100.Q acres of land, part of a military warrant, No. 2023, beginning at a fork of Mayfiéld creek, about, two miles by water above Fort Jefferson, where a branch occasioned by the high waters from the Mississippi runs out of said creek, and at high water empties into the river, at the upper end of the' iron-banks'; from said beginning, 500 poles when reduced to a straight line, and then off from.the.branch towards the Mississippi, on a line parallel to Mayfield' creek, until a. line from the extremity of said line, parallel with the.first line, will strike :May field-creek to include'the quantity.-”
 

 By a statute of Kentucky passed in 1820, all entries oh military warrants west of the Tennessee river are required to be surveyed agreeably to their calls; and any survey and'patent which shall cover more land than the entjy Calls for, is declared to be'void as to such surplus. There can be no objection to the validity of this law, as it impairs no right.
 

 Under this statute, the court were requested to give a construction
 
 to the entry
 
 in question. ' The prayer was, that the court .should instruct the jury, “if they believe from the-evidence that the' course of. Mayfield creek, from A to D, (the letter Á being at the fork of the creek, the beginning of the entry, and the-letter D at the mouth, of the creek,) is correctly laid down, then -the line from B (the termination of the first line of 500 poles) towards the Mississippi,should run parallel,to that, or (in other words) to Mayfield creek, to conform to the entry.”
 

 The only dispute is as to- the second line, which is “to run from the branch towards the. Mississippi, on a line parallel to Mayfield creek.” And this was the instruction prayed for, and which was rejected by the court. Had-'the instruction been in the very words of the entry, there would not have been a closer, conformity with it.
 

 The disputed line was called for by the - entry “to run parallel to Mayfield creek.” Now one line to be parallel to another must be equidistant from it.' And that was what the instruction' asked. From the words of the call in the entry, as to this line, the creek, from' the forks to. the nfcuth must havé been intended, as the line designated could only be parallel to'that part óf the creek.
 

 The third line called for in the entry was to run from the termination of the line parallel to Mayfield creek, and “parallel with the first line, so as to strike Mayfield creek to include the quantity.” As. this line strikes the creek at the mouth, and runs on the bank of the Mississippi,' it cannot be varied to include in the survey the thousand acres , called for in the entry. There is a deficiency of one hundred and acres, which covers the land in controversy. And' the question is, whether the second line called for in the entry, to run parallel with Mayfield creek, can he disregarded, and extended
 
 *196
 
 so as to include the lands of the defendants and the quantity called for iii the entry.
 

 In my opinion, .this can no more be done than the beginning called for in the entry can be changed, or the first line of the survey. The third line up the Mississippi was, by the entry, “to strike May-field. creek so as to include the quantity.”
 

 It is admitted that Mayfield creek, with its meanders, forms the closing line of the survey.' I know of no principle in the land law of Kentucky which authorizes: a court to disregard the specific calls of an entry, so as to include the- quantity designated. The locator was, no doubt, deceived as to the ground covered by his entry. The- line called to be run so as to Include the thousand acres-being bounde,d by the Mississippi; could not be varied so as to answer the - calls of the entry for' quantity. This was the misfortune of the locator which is chargeable only on himself. ' It is clear that he •cannot disregard the calls of the entry, on any other line, so as to include the quantity.
 

 The injustice .of such a construction to the defendants, seems to me to be clear. Finding the claim of Croghan’s entry designating in plain terms its boundaries, and knowing that by the law he was-limited to-the ealls of his entry, his survey not having be,en made, ■ they purchased the adjacent residuum'. And ! have no doubt that, by the well established principles of the land law in Kentucky, their title-.is good; and, therefore, the instruction prayed for should be given.
 

 In Rays
 
 v.
 
 Daniels et al., 2 B. Monr. 222, the court say in .reference to this district of country, where -a* patent has issued, the proof of a variance in- the survey from the entry, so as to make the patent void, for the land not included in' the entry, devolves on the adversary claimant.- But they do not say, in that or in -any other case, that where .the locator is limited strictly to the, cáíls of his entry, by a subsequent’entry, or, as in the present case, by an express statute, that the cal! for quantity controls the specific calls of the -entry. There is no' principle better settléd in the land law, than that the. calls in a survey and . patent.’are not" affected by quantity. If'no'.' private and paramount right be interfered yith, whether the survey and patent contain more or less than the quantity called fpr, it-is equally valid. - An entry cannot -call for a greater- number of acres than is authorized by the warrant on -which it is made; but, where the boundaries palled for 'are-specific, and the locator is 'limited strictly to the boundaries of his entry, in making.-his survey, he can no more disregard them than he can disregard the boundaries called for" in his patent,.
 

 Palpable mistakes' in the entry, such as a call for east instead of west, -which is apparent by other calls in the entry, may be corrected: But where there is no mistake or uncertainty in- the calls, to vary them is to make a new entry. This, I conceive, no court has
 
 *197
 
 power to' do. ' An entry,, like every other instrument of writing, must be construed by the words used. .And these words can never be extended, by constriictipn, so ,as to infringe upon subsequent 'and
 
 bond fide
 
 entries..